UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JOSEPH ANTHONY FAVORS,

Plaintiff,

Civil No. 21-2473 (JRT/TNL)

v.

SYNCHRONY BANK,

Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

Joseph Anthony Favors, Saint Peter Regional Treatment Center, 100 Freeman Drive, Saint Peter, MN 56082, *pro se* plaintiff.

Cory D. Olson, **ANTHONY OSTLUND LOUWAGIE DRESSEN & BOYLAN PA**, 90 South Seventh Street, Suite 3600, Minneapolis, MN 55402, for defendant.

Plaintiff Joseph Anthony Favors, has commenced this action against defendant Synchrony Bank, asserting various claims, all arising from the use of an unsecured credit card account with Synchrony. Synchrony has moved to dismiss Favors's Second Amended Complaint. Because Favors has plausibly alleged both a claim under the Equal Credit Opportunity Act and a claim of unjust enrichment, the Court will deny Synchrony's Motion to Dismiss these claims. Because Favors has failed to state a claim upon which relief can be granted for the remainder of his claims, the Court will grant Synchrony's Motion to Dismiss those claims and dismiss the claims without prejudice.

**BACKGROUND**

Favors asserts that in 2020, at a date to be determined, Favors applied for and was granted an unsecured credit card account with Synchrony Bank. (2nd Am. Compl. at 6, May 9, 2022, Docket No. 30.) Prior to granting Favors the card, Favors asserts that Synchrony pulled his credit report and decided to grant him a card with a purchasing limit of $3,400. (*Id.* at 7.) Favors claims that at some point that year he was charged $108.64 for an item that was immediately returned and to which he argues he was entitled a full refund. (*Id.*)

Favors states that within ten days of receiving the billing statement, he wrote a dispute letter to Synchrony, disputing the $108 charge. (*Id.*) Favors asserts that after he filed that dispute letter, he received another billing statement that included not only the $108 charge but also a $41 late fee. (*Id.* at 9.) Favors sent another dispute letter to Synchrony again disputing the charges. (*Id.* at 11.) Synchrony sent a third billing statement which was identical to the first two, added another $41 late fee, and notified Favors that his credit limit was being reduced from $3,400 down to $250. (*Id.* at 13.) Synchrony then closed Favors's account. (*Id.* at 14.)

Favors states that Synchrony never provided him with a written explanation in response to his questions raised in the dispute letters. (*Id.*) Synchrony did state, however, that they reduced his credit limit because he had not paid his bill and he had a reduced credit score. (*Id.* at 14–15.) Favors also claims that Synchrony did not inform Favors that

they had already made a negative report of his account to a credit reporting agency ("CRA"). (*Id.* at 10.)

Favors commenced this action against Synchrony asserting violations of numerous federal statutes and state law. Favors alleges that Synchrony violated the Equal Credit Opportunity Act ("ECOA"), Equal Rights under the Law under 42 U.S.C. § 1981, Fair Credit Reporting Act ("FCRA"), Fair Credit Billing Act ("FCBA"), Truth in Lending Act ("TILA"), and 42 U.S.C. § 1983 claim. (2nd Am. Compl. at 21–26.) Favors also asserts state law claims including unconscionable (implied) contracts, unjust enrichment, and a violation of Minnesota Statute § 609.748. (*Id.* at 26–33.) Synchrony has now filed a Motion to Dismiss all claims. (Mot. Dismiss, Feb. 23, 2022, Docket No. 12.)

**DISCUSSION**

I.  **STANDARD OF REVIEW**

In reviewing a motion to dismiss under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "'claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in their favor. *See Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl.*

3

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

When considering a motion to dismiss, pleadings submitted by pro se litigants are to be liberally construed and must be held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, pro se litigants are not excused from failing to comply with substantive or procedural law. *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984).

**II.     ANALYSIS**

As Synchrony seeks dismissal of every claim stated in the Second Amended Complaint, the Court will address these claims in turn.[1]

### A. Equal Credit Opportunity Act Claim

Favors has brought a claim under 15 U.S.C § 1691(a)(3) of the ECOA which states that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . because the applicant has in good faith exercised any right under [the Consumer Credit Protection Act]." 15 U.S.C. § 1691(a)(3). Specifically, Favors asserts that Synchrony retaliated against him by lowering his credit limit and ultimately closing his account after receiving his dispute letters.

---

[1] Synchrony also asserts that the Second Amended Complaint should be dismissed because it is incomprehensible. The Court disagrees. While true that the Second Amended Complaint may not support a claim for relief, it is possible to discern the claims, factual underpinnings, and overall assertions Favors makes within.

Although not addressed by the Eighth Circuit specifically, the Eleventh Circuit has set out guidance on how to establish a prima facie case for retaliation under the ECOA, which the Court will adopt.  *See Lundahl v.* Gross, No. 18-cv-5090, 2020 WL 927650, at *8 (D.S.D. Feb. 26, 2020) (also adopting the Eleventh Circuit test).  Plaintiffs must show that they "(1) exercised in good faith (2) a right under the Consumer Credit Protection Act, and (3) as a result, the creditor discriminated against [them] with respect to the credit transaction."  *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1335 (11th Cir. 2000). To establish the discrimination element, a plaintiff must show either "that the creditor refused to extend credit to the applicant or that it extended credit but on less favorable terms."  *Id.*  at 1336.

Taking all allegations in the Second Amended Complaint as true, Favors has established a prima facie claim under the ECOA.  Favors asserts that he, in good faith, believed that the charge to his account was incorrect and that he filed a dispute letter with Synchrony identifying the issue.  Favors alleges that after he sent his dispute letters, Synchrony told him that it was lowering his credit limit and then ultimately closed his account.  While Synchrony argues that it had a legal reason for its actions, the inquiry at this stage evaluates the sufficiency of a plaintiff's complaint, not a defendant's additional factual allegations.  Favors has adequately alleged that because he, in good faith, exercised a right under the Consumer Credit Protection Act, an adverse action was taken against him—he was extended credit from Synchrony on less favorable terms and

eventually his credit with Synchrony was terminated. (*See* 2nd Am. Compl at 14–15.) This is sufficient to establish a prima facie case under the ECOA on a motion to dismiss. As such, the Court will deny Synchrony's Motion to Dismiss the ECOA claim.

### B. Fair Credit Reporting Act Claim

Favors asserts a claim against Synchrony under 15 U.S.C. § 1681 also known as the FCRA. The FCRA gives a consumer certain rights with respect to the credit information that is maintained and distributed about them. Agencies that furnish information to CRAs, such as Synchrony, have responsibilities under the FCRA. Such agencies are required to conduct investigations pursuant to the requirements of § 1681i when the agencies receive notice that the information provided to the CRA has been disputed. 15 U.S.C. § 1681s-2(b)(1); *see also Schaffhausen v. Bank of Am., N.A.,* 393 F. Supp. 2d 853, 858 (D. Minn. 2005) (discussing duties under § 1681s-2(b)(1) and the level of investigation required). The notice of the dispute must be provided by the CRA itself, not the plaintiff. 15 U.S.C. § 1681s–2(b)(1) (discussing duties to investigate once notice is received pursuant to § 1681i(a)(2)); 15 U.S.C. § 1681i(a)(2) (discussing the notice that a CRA must provide to a furnisher of information). 15 U.S.C. § 1681m requires that users who take an adverse action based upon information provided in consumer reports must provide notice of the adverse action to the consumer.

Favors claim under 15 U.S.C. § 1681m fails based upon his own allegations in the Second Amended Complaint. Favors agrees that Synchrony sent him a letter disclosing

the adverse action based upon a review of his consumer report. (2nd Am. Compl. 14–15.) Thus, Favors cannot demonstrate he has a claim under 15 U.S.C. § 1681m, because his own allegations show that Synchrony was compliant with the statutory requirements.

While Favors does not explicitly allege a violation of § 1681s-2(b)(1) to support his claim, the Court will analyze it due to the liberal pleading standard for pro se plaintiffs. A claim under § 1681s–2(b)(1) also fails. The Second Amended Complaint contains no factual assertions that Synchrony received notice of the dispute from a CRA, that Favors even lodged a dispute with a CRA, that Synchrony failed to undertake an investigation, or that any investigation did not comply with the procedures set forth in § 1681s-2(b)(1). As such, Favors has not stated a claim for relief under the FCRA and the Court will grant Synchrony's Motion to Dismiss this claim.

### C.  42 U.S.C. § 1981 Claim

Favors asserts a claim under 42 U.S.C. § 1981 which provides that all persons within the jurisdiction of the United States shall have "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). There are four elements to a claim under § 1981: "(1) membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by the defendant." *Gregory v. Dillard's Inc.*, 565 F.3d 464, 469 (8th Cir. 2009). Favors claim under § 1981 fails because he does not allege that he is a member of

a protected class. For this reason, the Court will grant Synchrony's Motion to Dismiss this claim.

### D. Truth in Lending Act Claim

Favors asserts a claim under the TILA but fails to provide any statement, even a legal conclusion, in his Second Amended Complaint in support of this claim. As Favors alleges nothing in support of his TILA claim, the Court will dismiss it.

### E. Fair Credit Billing Act Claim

Favors asserts a claim under the FCBA codified at 15 U.S.C. § 1666. The FCBA provides that an obligor, within sixty days of receipt of a billing statement, may send a written notice to the creditor indicating the obligor believes there was a billing error. *See* 15 U.S.C. § 1666(a). Within thirty days of receipt of that notice, the creditor must send written acknowledgement of the notice and within ninety days either make appropriate corrections or provide a written explanation after investigation explaining why the billing statement was correct. *Id.* First, Favors has not pled enough facts to determine the specific dates within which he had to send his written notice and that Synchrony was required to respond. For example, while Favors provides in his opposition brief that the first dispute letter was sent on May 20, 2021, Favors did not plead when he received the billing statement he contends was erroneous. This is necessary to determine whether he sent his dispute letter within the sixty days required under the statute to trigger Synchrony's duties. *See* 15 U.S.C. § 1666(a).

Furthermore, Favors's FCBA claim fails because he admits that Synchrony sent him an acknowledgment of the dispute and a written explanation including a copy of the purchase receipt for the item he allegedly returned in response to his first dispute letter. (2nd Am. Compl. at 11–12.)  Therefore, since critical information is missing from the Second Amended Complaint, it does not plausibly state that Synchrony violated the FCBA. As such, the Court will grant Synchrony's Motion to Dismiss the FCBA claim.

### F.  42 U.S.C. § 1983 Claim

Favors claims that his First Amendment rights were violated by Synchrony and seeks relief under 42 U.S.C § 1983.  In order to assert a claim under § 1983, the plaintiff must demonstrate that the individual who allegedly deprived them of their constitutional right was a government actor or acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Acting under the color of state law requires the defendant to exercise power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Id.* (citing *United States v. Classic*, 313 U.S. 299 (1941)).  Favors asserts no facts which indicate that Synchrony was either a governmental actor or acting under the color of law as defined under § 1983.  As such, he has not stated a plausible claim for relief under § 1983 and the Court will grant Synchrony's Motion to Dismiss this claim.

### G.  Unconscionable Contract Claim

Favors also asserts several Minnesota state law claims against Synchrony.  First, Favors asserts a claim titled "unconscionable (implied) contract" which the Court construes as a claim for unconscionable contract.  An unconscionable contract under Minnesota law is defined as a contract "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other."  *Siebert v. Amateur Athletic Union of U.S., Inc.*, 422 F. Supp. 2d 1033, 1041 (D. Minn. 2006) (quoting *In re Hoffbeck*, 415 N.W.2d 447, 449 (Minn. Ct. App. 1987)).  As one can imagine, this is a high standard.

Favors does not make clear exactly which contract he is referring to, but as it appears as though the only contract between the parties is the cardholder agreement, the Court assumes he is asserting that this contract is unconscionable.  As the Court understands Favors's argument, he asserts that the late fees of $41 based upon an unpaid amount of only $108 was unconscionable.  Favors has not presented any evidence that would show the late fees he incurred were excessive or abnormal in comparison to like cardholder agreements.  As such, Favors has not presented evidence from which the Court could conclude that the contract between Favors and Synchrony was unconscionable such that no man in his senses or not under delusion would enter into.  As such, the Court will grant Synchrony's Motion to Dismiss the unconscionable contract claim.

### H. Unjust Enrichment Claim

Favors asserts a claim of unjust enrichment against Synchrony. To establish a claim for unjust enrichment, a plaintiff "must show that another party knowingly received something of value to which he was not entitled." *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001). Specifically, a plaintiff "must plausibly allege that (1) the defendant knowingly received something of value; (2) the defendant was not entitled to receive it; and (3) it would be unjust for the defendant to retain it." *Frank v. Gold'n Plump Poultry, Inc.*, No. 04-1018, 2007 WL 2780504, at *11 (D. Minn. Sept. 24, 2007)).

Favors first argues that Synchrony was unjustly enriched when it reduced his credit limit, but this assertion is insufficient to state a claim for unjust enrichment as Synchrony did not receive anything of value by reducing the credit limit. Favors has, however, stated a plausible alternative claim for unjust enrichment as it relates to the $108 and the late fees he was charged. Favors stated that the $108 was for a product that was refunded, so if true, that money should have been refunded to the account. Furthermore, Favors alleges that Synchrony was not entitled to any late fees because the $108 on his account was the result of a billing error. Favors has stated plausible allegations that Synchrony

received value that it was not entitled to receive.  As such, the claim for unjust enrichment based upon money damages can survive on this theory.[2]

### I. Minnesota Statute § 609.748 Claim

Favors also brings a claim for a violation under Minnesota Statute § 609.748 which allows a petitioner to seek a restraining order if they are the victim of harassment. Favors's claim fails because he has not complied with the statutory requirements for bringing a claim under § 609.748 including, but not limited to, his failure to file an affidavit which states the specific facts and circumstances from which relief is sought.  Minn. Stat. § 609.748, subd. 3.  On this fact alone, Favors's claim cannot survive and the Court need not consider any other reason why such a claim should be dismissed. The Court will grant Synchrony's Motion to Dismiss Favors's claim under § 609.748.

### CONCLUSION

The Court will grant in part and deny in part Synchrony's Motion to Dismiss Favors's Second Amended Complaint.  Favors's claim under the ECOA and his claim for unjust enrichment based upon the $108 charge to his account and subsequent late fees survive at this stage.  The remainder of his claims fail and will be dismissed without prejudice.

---

[2] To be clear, the claim for unjust enrichment is pled in the alternative, if there is a valid contract that governs the rights of the parties, a claim for unjust enrichment is unavailable. *United States Fire Ins. Co. v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981).

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss the Second Amended Complaint [Docket No. 12] is **GRANTED in part and DENIED in part** as follows:

    a. Defendant's Motion to Dismiss is **GRANTED** as to Plaintiff's Federal & Constitutional Claims II, III, IV, V, and VI and those claims are **DISMISSED WITHOUT PREJUDICE**;

    b. Defendant's Motion to Dismiss is **GRANTED** as to Plaintiff's State Law Claims I and III and those claims are **DISMISSED WITHOUT PREJUDICE**;

    c. Defendant's Motion to Dismiss is **DENIED** as to Plaintiff's Federal & Constitutional Claim I; and

    d. Defendant's Motion to dismiss is **DENIED** as to Plaintiff's State Law Claim II.

DATED: September 30, 2022　　　　　　　　　　　　／s／ John R. Tunheim
at Minneapolis, Minnesota.　　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge